ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| RINOR CORPORATION<br>Parte Demandante-Recurrida<br><br>v.<br><br>JOSÉ L. QUIRÓS JORGE; DR. CARLOS DISDIER RODRÍGUEZ; DRA. MAYRA MARTÍNEZ MEDINA, y la Sociedad Legal de Gananciales compuesta por ellos, BAYAMON MEDICAL CENTER CORP; et als<br>Parte Demandada-Reconviniente Recurrida<br><br>CARIDAD GALINDO PRIMOLA Y MARÍA DE LOS ÁNGELES MACHADO LUNA RICARDO FELIPE MACHADO ORTIZ NORMA AECIA ORTIZ COLON NORMA MACHADO ORTIZ<br>Miembros Sucesión Richard Machado González<br>Interventores-Recurridos<br><br>RICHARD MACHADO ORTIZ; RICARDO MACHADO MARISCAL DE GANTE; MARÍA DEL MAR MACHADO MARISCAL DE GANTE; y MARÍA TERESA MACHADO MARISCAL DE GANTE<br>Miembros Sucesión Richard Machado González<br>Interventores-Peticionarios | TA2026CE00723 | *Certiorari* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br>Caso Núm.:<br>BY2023CV05090<br><br>Sobre: Cobro de dinero |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro, el Juez Sánchez Báez y la Juez Lotti Rodríguez.

Lotti Rodríguez, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 23 de junio de 2026.

Comparecen ante nos, como interventores-peticionarios, los señores Richard Machado Ortiz, Ricardo Machado Mariscal De Gante, María del Mar Machado Mariscal De Gante y María Teresa Machado Mariscal De Gante (en

adelante, peticionarios) y nos solicitan que revisemos la *Orden* dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI o foro primario), emitida y notificada el 8 de mayo de 2026. Mediante esta, el foro primario declaró No Ha Lugar la solicitud de los interventores para que se les cursara información relacionada con las ofertas transaccionales habidas entre la parte demandante, Rinor Corporation (en adelante, RINOR), y los demandados, José L. Quirós Jorge, el doctor Carlos Disdier Rodríguez, la doctora Mayra Martínez Medina, la Sociedad Legal de Gananciales compuesta por estos y Bayamón Medical Center Corp. (BMC) (en adelante y en conjunto, los demandados-recurridos).

Por los fundamentos que exponemos a continuación, denegamos el auto de *certiorari* solicitado.

**I.**

El 15 de septiembre de 2023, RINOR insto una *Demanda*[1] en cobro de dinero contra los demandados-recurridos en la cual reclamó el pago de $11,428,939.89, más intereses por mora, relacionados con la venta de las acciones del Hospital Hermanos Meléndez.

Posteriormente, el 28 de noviembre de 2023, los codemandados presentaron una *Contestación a Demanda y Reconvención*[2] y, ese mismo día, BMC presentó una *Demanda Contra Tercero*[3]. Mediante esta última, incluyó como terceros demandados al Dr. Richard Machado González y a la Dra. Norma A. Ortiz Colón, alegando que ambos eran propietarios de las acciones objeto de la transacción y acreedores solidarios de la acreencia reclamada en el pleito.

Mientras la *Demanda Contra Tercero* permanecía pendiente, el Dr. Machado González falleció. Como consecuencia, el 19 de agosto de 2024 BMC

---

[1] Entrada Núm. 1 del SUMAC del TPI.
[2] Entrada Núm. 23 del SUMAC del TPI.
[3] Entrada Núm. 24 del SUMAC del TPI.

presentó una *Demanda Contra Tercero Enmendada*[4] mediante la cual sustituyó al causante por sus herederos y estos fueron incluidos en el pleito como terceros demandados (en adelante, Sucesión Machado).[5]

Luego de varios incidentes procesales, el 18 de junio de 2025 la señora Norma Machado Ortiz (en adelante, señora Machado Ortiz), hija del Dr. Machado González, presentó una *Moción Solicitando Exclusión de Terceros Demandados en su Carácter Personal*[6]. En síntesis, sostuvo que, conforme al testamento otorgado por el Dr. Machado González, ella había sido designada albacea y ejecutora universal de la sucesión, por lo que procedía excluir a los demás miembros de esta del pleito. A dicha petición se unió el señor Ricardo Felipe Machado-Ortiz, otro de los coherederos.[7]

Diversas partes se opusieron a dicha solicitud.[8] En términos generales, argumentaron que existían controversias relacionadas con la validez del testamento y con la permanencia de la señora Machado Ortiz como albacea, por lo que no procedía que representara de manera exclusiva a la sucesión.

Evaluados los planteamientos de las partes, el 21 de julio de 2025 el TPI emitió una *Resolución Interlocutoria*[9] mediante la cual declaró No Ha Lugar la solicitud de exclusión. En particular, expresó que no le parecía prudente conceder dicho remedio cuando existía un pleito en el que se impugnaba el testamento que designó a la señora Machado Ortiz como albacea y se solicitaba su destitución.

Posteriormente, RINOR presentó una *Moción de Sentencia Sumaria Parcial*[10] mediante la cual sostuvo que tanto la corporación demandante como los miembros de la Sucesión Machado eran acreedores solidarios de la

---

[4] Entrada Núm. 66 del SUMAC del TPI.

[5] Estos son: Dra. Norma Ortiz Colón, Sr. Richard Machado Ortiz, Sra. Norma Machado Ortiz, Ricardo Felipe Machado-Ortiz, María del Mar Machado-Mariscal, María Teresa Machado-Mariscal, Ricardo Machado-Mariscal, María de los Ángeles Machado-Luna y Caridad Galindo Primola.

[6] Entrada Núm. 154 del SUMAC del TPI.

[7] Entrada Núm. 170 del SUMAC del TPI.

[8] Véanse Entradas Núm. 175 y 179 del SUMAC del TPI.

[9] Entrada Núm. 182 del SUMAC del TPI.

[10] Entrada Núm. 167 del SUMAC del TPI.

acreencia reclamada en este caso. A dicha solicitud se allanó la señora Machado Ortiz y BMC.[11] Por su parte, varios miembros de la sucesión comparecieron y, aunque expresaron reservas respecto a otros asuntos relacionados con la administración del caudal y de RINOR, reconocieron que la controversia principal giraba en torno al cobro de la acreencia reclamada.

Así las cosas, el 13 de agosto de 2025 el foro dictó *Sentencia Sumaria Parcial*[12]. Mediante esta, determinó que RINOR y los miembros de la Sucesión Machado eran acreedores solidarios de la acreencia objeto del litigio. Asimismo, ordenó el archivo sin perjuicio de la *Demanda Contra Tercero* y concedió a los miembros de la sucesión la oportunidad de solicitar intervención en el caso si entendían que sus intereses podían verse afectados por el resultado del pleito.

En cumplimiento con dicha determinación, diversos miembros de la Sucesión Machado solicitaron intervenir en el caso. Algunos sostuvieron que interesaban participar para velar por el cobro de la acreencia reclamada. Otros, además, intentaron introducir alegaciones relacionadas con controversias sucesorias, actuaciones de la señora Machado Ortiz y asuntos internos de RINOR.

BMC y RINOR se opusieron a varias de dichas solicitudes. En esencia, argumentaron que el caso era uno de cobro de dinero y que no debía convertirse en un litigio paralelo sobre asuntos hereditarios o corporativos.

Mediante *Resolución Interlocutoria*[13] notificada el 12 de septiembre de 2025, el TPI permitió la intervención de varios miembros de la sucesión.[14] No obstante, limitó expresamente dicha intervención a la acción de cobro de dinero y a la reconvención, excluyendo controversias relacionadas con la partición de herencia, la administración de la sucesión y asuntos internos de

---

[11] Véanse Entradas Núm. 191 y 193, respectivamente, del SUMAC del TPI
[12] Entrada Núm. 194 del SUMAC del TPI.
[13] Entrada Núm. 205 del SUMAC del TPI.
[14] En dicha *Resolución Interlocutoria* se permitió la intervención de Caridad Galindo Primola y María de los Ángeles Machado Luna; Ricardo, María Teresa y María del Mar Machado Mariscal de Gante.

la corporación demandante. Mediante órdenes y resoluciones posteriores el TPI reconoció la intervención de otros miembros de la sucesión en términos similares.[15]

Luego de varios incidentes procesales, el 24 y 27 de abril de 2026, los peticionarios presentaron dos mociones en las que señalaron que RINOR había realizado una oferta transaccional a la parte demandada-recurrida y solicitaron al TPI que ordenara a RINOR a proveerles copia de las ofertas transaccionales remitidas a BMC y demás comunicaciones y notificaciones relacionadas con las negociaciones.[16] En esencia, sostuvieron que, en su condición de acreedores solidarios e interventores admitidos, tenían derecho a conocer y participar en cualquier gestión transaccional que pudiera afectar la acreencia reclamada en el pleito.

El 7 de mayo de 2026 RINOR se opuso a dichas solicitudes.[17] En síntesis, argumentó que los interventores no tenían derecho a recibir la información solicitada y que la conducción de las negociaciones transaccionales correspondía a la corporación demandante. Argumentó que las ofertas que se han notificado recíprocamente la parte demandada y la parte demandante fueron ambas a tenor de las disposiciones sobre oferta de sentencia bajo la Regla 35.1 de Procedimiento Civil. Expuso que, en la demanda de autos, Rinor Corpopration representa a todos los acreedores solidarios y que, en efecto, responde ante los demás acreedores solidarios en caso de incurrir en alguna actuación que resulte perjudicial a alguno de estos.

Así las cosas, el 8 de mayo de 2026 el foro primario emitió una *Orden*[18] mediante la cual dispuso lo siguiente: "Evaluados los planteamientos de las partes, se declara No Ha Lugar la solicitud de los interventores para que se les curse información relacionada a las ofertas transaccionales".

---

[15] Véanse Entradas Núm. 208, 214 y 222 del SUMAC del TPI, reconociendo como interventores a Richard Machado Ortiz, Ricardo Felipe Machado Ortiz y Norma Machado Ortiz, respectivamente.
[16] Entradas Núm. 246 y 247 del SUMAC del TPI.
[17] Entrada Núm. 252 del SUMAC del TPI.
[18] Entrada Núm. 253 del SUMAC del TPI.

Inconformes con dicha determinación, los peticionarios presentaron sus respectivas mociones de reconsideración reiterando, en esencia, los mismos planteamientos que en la solicitud inicial.[19] Sin embargo, mediante resoluciones notificadas el 27 de mayo de 2026, el TPI declaró No Ha Lugar ambas solicitudes.[20]

Aún inconformes, el 7 de junio de 2026 los peticionarios acudieron ante este Tribunal mediante el recurso de *certiorari* de epígrafe, en el que formulan los siguientes señalamientos de error:

**PRIMER ERROR:**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR "NO HA LUGAR" LA SOLICITUD DE LOS INTERVENTORES PARA QUE LE FUERA NOTIFICADA LA OFERTA TRANSACCIONAL Y DOCUMENTOS RELACIONADOS, DESCONOCIENDO LOS DERECHOS PLENOS DE PARTE QUE LE CONFIERE LA REGLA 21 DE PROCEDIMIENTO CIVIL Y LA JURISPRUDENCIA NORMATIVA DEL TRIBUNAL SUPREMO DE PUERTO RICO.**

**SEGUNDO ERROR:**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR UNA ORDEN SIN FUNDAMENTACIÓN QUE INCIDE DIRECTAMENTE SOBRE LAS GARANTÍAS DEL DEBIDO PROCESO DE LEY EN SU VERTIENTE PROCESAL, CONSAGRADAS EN LA SECCIÓN 7 DEL ARTÍCULO II DE LA CONSTITUCIÓN DE PUERTO RICO Y EN LA ENMIENDA XIV DE LA CONSTITUCIÓN DE LOS ESTADOS UNIDOS, AL PRIVAR AL INTERVENTOR DE NOTIFICACIÓN ADECUADA Y DE LA OPORTUNIDAD DE SER OÍDO ANTES DE QUE SE DISPONGA, MEDIANTE TRANSACCIÓN, DEL CRÉDITO OBJETO DEL LITIGIO.**

**TERCER ERROR:**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL CONVALIDAR, MEDIANTE SU NEGATIVA A ORDENAR LA ENTREGA DE LA OFERTA TRANSACCIONAL, UNA ACTUACIÓN DE LA PRESIDENCIA DE LA CORPORACIÓN DEMANDANTE QUE COMPROMETE LOS DEBERES FIDUCIARIOS DE LEALTAD Y CUIDADO PREVISTOS EN LA LEY GENERAL DE CORPORACIONES DE PUERTO RICO, ASÍ COMO LOS DEBERES SUCESORALES QUE PESAN SOBRE LA EJECUTORA TESTAMENTARIA FRENTE A LOS DEMÁS COACREEDORES SOLIDARIOS.**

---

[19] Entradas Núm. 259 y 262 del SUMAC del TPI.
[20] Entradas Núm. 263 y 264 del SUMAC del TPI.

**CUARTO ERROR:**

**ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR UNA ORDEN QUE, EN LA PRÁCTICA, CONFIERE A LA SRA. NORMA MACHADO ORTIZ LA REPRESENTACIÓN DE LOS DEMÁS MIEMBROS DE LA SUCESIÓN MACHADO QUE EL PROPIO TPI YA LE HABÍA DENEGADO EN SU RESOLUCIÓN INTERLOCUTORIA DE 21 DE JULIO DE 2025 [SUMAC 182], INCURRIENDO ASÍ EN UNA CONTRADICCIÓN INTERNA INSOSTENIBLE.**

El 19 de junio de 2026, la recurrida Rinor Corporation presentó una Moción en Cumplimiento de Orden. Con el beneficio de los escritos de las partes, procedemos a disponer.

## II

### A. *Certiorari*

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que faculta a un tribunal de mayor jerarquía a revisar las decisiones emitidas por un tribunal inferior. *BPPR v. SLG Gómez-López*, 213 DPR 314, 336 (2023); *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021). "La característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos". *BPPR v. SLG Gómez-López, supra*, pág. 337; *Rivera et al. v. Arcos Dorados et al., supra*, pág. 209; *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Esta discreción, se ha definido como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Negrón v. Srio de Justicia*, 154 DPR 79, 91 (2001).

Sin embargo, la discreción para expedir el recurso no es irrestricta, ni autoriza al tribunal a actuar de una forma u otra en abstracción del resto del Derecho. *Pueblo v. Rivera Montalvo, supra*, pág. 372, citando a *Negrón v. Srio. De Justicia, supra*; *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016).

Por otra parte, la Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1, delimita nuestra autoridad y prohíbe la intervención en las determinaciones interlocutorias emitidas por el Tribunal de Primera Instancia, salvo en contadas excepciones. *Scotiabank v. Zaf Corp. et al.*, 202 DPR 478, 486-487 (2019). Lo previamente señalado persigue evitar dilaciones al revisar controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Id.* Así pues, la Regla 52.1 de Procedimiento Civil, *supra*, dispone que podemos expedir el recurso de *certiorari* para resolver resoluciones u órdenes interlocutorias dictadas por el foro primario cuando:

> [S]e recurra de una resolución u orden bajo las Reglas 56 [Remedios Provisionales] y 57 [*Injuction*] o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias [...] cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. 32 LPRA Ap. V, R. 52.1.

Asimismo, con el fin de que podamos ejercer de manera sabia y prudente la facultad discrecional de entender o no en los méritos de los asuntos que nos son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob Enmdas. Reglamento TA*, 2025 TSPR 141, 216 DPR ___ (2025), R. 40, nos señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. En lo pertinente, la Regla 40 dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Ahora bien, ninguno de los criterios antes citados es determinante por sí solo y no constituye una lista exhaustiva. *García v. Padró,* 165 DPR 324, 335 esc. 15 (2005), citando a H. Sánchez Martínez, *Derecho Procesal Apelativo*, Hato Rey, Lexis-Nexis de Puerto Rico, 2001, pág. 560.

De otra parte, como norma general, los tribunales revisores no intervienen con el manejo de los casos de los tribunales de instancia, salvo que "se demuestre que este último actuó con prejuicio o parcialidad, que hubo un craso abuso de discreción, o que se equivocó en la interpretación o aplicación de alguna norma procesal o de derecho sustantivo". *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000), citando a *Lluch et al. v. España Service Sta. et al.,* 117 DPR 729, 745 (1986). En tal sentido, al optar por no expedir el auto solicitado, no se está emitiendo una determinación sobre los méritos del asunto o cuestión planteada, por lo que ésta puede ser presentada nuevamente a través del correspondiente recurso de apelación. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008).

### B. Obligaciones solidarias

Nuestro ordenamiento jurídico reconoce las obligaciones mancomunadas y las obligaciones solidarias. *Fraguada Bonilla v. Hosp. Aux. Mutuo,* 186 DPR 365, 375 (2012). Como norma general, la mera concurrencia de varios acreedores o de varios deudores en una misma obligación no implica solidaridad. Esta surge únicamente cuando así se establece expresamente.

Art. 1090 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3101[21];

*Fraguada Bonilla v. Hosp. Aux. Mutuo, supra*; *García Pérez v. Corp. Serv.*

*Mujer*, 174 DPR 138, 149 (2008).

En particular, el Art. 1090 del Código Civil de 1930, *supra*, dispone lo

siguiente:

> La concurrencia de dos o más acreedores o de dos o más deudores en una sola obligación no implica que cada uno de aquéllos tenga derecho a pedir ni cada uno de éstos deba prestar íntegramente las cosas objeto de la misma. Sólo habrá lugar a esto cuando la obligación expresamente lo determine, constituyéndose con el carácter de solidaria.

Ahora bien, una vez pactada la solidaridad, cada acreedor tiene derecho

a reclamar la totalidad de la prestación y cada deudor viene obligado a

cumplir íntegramente con ella. *Ramos v. Caparra Dairy, Inc.*, 116 DPR 60, 62-

63 (1985). Es decir, conforme a lo resuelto en *Ramos v. Caparra Dairy*, cuando

existe solidaridad activa, cualquiera de los acreedores está facultado para

exigir el pago total del crédito sin necesidad de la intervención de los demás

acreedores.

Nuestro Código Civil también dispone que: "[c]ada uno de los

acreedores solidarios puede hacer lo que sea útil a los demás, pero no lo que

les sea perjudicial". Art. 1094 del Código Civil de 1930, 31 LPRA sec. 3105.

Asimismo, el deudor puede pagar la deuda a cualquiera de los acreedores

solidarios; no obstante, si hubiere sido judicialmente demandado por alguno

de ellos, a este deberá efectuar el pago. Art. 1095 del Código Civil de 1930,

31 LPRA sec. 3106.

**III**

En el presente caso, los peticionarios sostienen que el foro primario erró

al denegar su solicitud para que se les cursara información relacionada con

las ofertas transaccionales intercambiadas entre RINOR y los demandados-

---

[21] A pesar de que el Código Civil de Puerto Rico de 1930 fue derogado por el Código Civil de Puerto Rico de 2020, Ley Núm. 55 de 1 de junio de 2020, hacemos referencia al primero por ser el derecho aplicable a la controversia de autos, toda vez que la deuda reclamada surge de una obligación contractual contraída durante la vigencia del derogado Código Civil.

recurridos. En esencia, argumentan que su condición de acreedores solidarios e interventores les confiere el derecho a conocer y ser notificados de cualquier gestión transaccional que pudiera afectar la acreencia objeto del litigio.

No obstante, luego de examinar el expediente ante nuestra consideración y los criterios que rigen la expedición del auto de *certiorari*, concluimos que no procede nuestra intervención en esta etapa de los procedimientos.

Particularmente, los peticionarios no han demostrado que la expedición del auto sea necesaria para evitar un fracaso irremediable de la justicia. Tampoco han alegado que la decisión recurrida resulta arbitraria o en un abuso de su discreción. La controversia planteada no versa sobre una transacción consumada ni sobre una actuación concreta que haya afectado sus derechos como acreedores solidarios. Por el contrario, sus planteamientos son especulativos y descansan en la posibilidad de que una eventual transacción pudiera resultar adversa a sus interesen, como acreedores solidarios.

Por último, los peticionarios no están desprovistos de un remedio en ley, en el supuesto de que la parte recurrida suscriba un acuerdo de transacción que estos consideren van en perjuicios de sus intereses como acreedores solidarios. En estas circunstancias, concluimos que los peticionarios no han demostrado la existencia de alguna de las situaciones excepcionales que justifiquen el ejercicio de nuestra facultad revisora discrecional, conforme a los criterios provistos en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

En consecuencia, denegamos la expedición del auto solicitado.

**IV**

Por los fundamentos antes expuestos, denegamos la expedición del auto de *certiorari*.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones